Tom Witt and Isham Swilley, *Plaintiffs in Error*, v. The State of Florida, *Defendant in Error*.

Opinion Filed June 12, 1920.

1. Where there is substantial evidence which if the jury be- lieves would sustain the verdict, and the trial judge refuses to set it aside, the verdict will not be disturbed.

2. No error can be predicated upon the refusal to give a requested instruction that is substantially given in the general charge.

3. It is the duty of the trial court to instruct the jury on the law applicable to the facts proven, and a refusal to do so when asked will be error; but if a party wishes to avail himself of the omission of the court to charge the jury on any point in the case, he must ask the court to give the instruction desired; otherwise he will not be permitted to assign the omission as error.

A Writ of Error to the Circuit Court for Madison County; M. F. Horne, Judge.

Judgment affirmed.

*Charles E. Davis,* for Plaintiffs in Error;

*Van C. Swearingen,* Attorney General, and *D. Stuart Gillis,* Assistant, for the State.

BROWNE, C. J.—The plaintiffs in error were tried for murder in the first degree on an indictment charging Tom Witt as principal in the first degree, and Isham Swilley as principal in the second degree. A verdict of manslaughter was found against both.

The defendant and the deceased were young negroes, who with several other persons spent the early evening of the killing at a neighbor's house. The testimony does not disclose any bad blood or ill-feeling existing between the deceased and either of the defendants.

The only witness for the State who saw the killing testified in part, "They got to playing with the gun; Little Ned Wilkins got hold of Isham's gun, and Isham called

to Tom Witt to make him turn it loose, and he called Tom to make him turn it loose, Tom came up and shot. I don't know exactly how close Tom came to little Ned before he shot;" "he shot him with a shotgun; Little Ned fell; Tom went off; he walked off; right after the shooting. I don't know how long little Ned lived after the shooting, I left directly he got shot. Tom walked up and shot little Ned right after Isham told him to make Ned turn the gun loose. Both these boys had guns that night and afternoon; Isham and Tom both had guns."

Both of the defendants denied that Tom Witt did the shooting. Swilley swore that it was his gun that killed the deceased, and that it was discharged while they were playing with it. On this point he testified, "After we got there and was talking, he came up there and grabbed my gun, and me and him and Mutt was pulling; it was Ned that grabbed my gun, and me and him and Mutt was pulling; it was Ned that grabbed my gun; he grabbed the barrel of it; it was a little fence about knee high; McRae and I were on one side and Ned on the other; no one else had hold of my gun, just us boys; there was a gun went off, it was my gun. It fired and hit him somewhere about here (indicating the breast), and after that we picked him up and carried him in the house. We boys were not mad with each other. Ned was drunk or had been drinking is how we came to scuffling over the gun.

"I was holding the stock to keep him from getting it, and John helped me, and Mutt Smity was helping the other fellow. I did not have any idea that the gun was going off. There was no feeling between Ned and myself at all. Ned worked at Mr. John Smith's. I worked at Mr. Smith's; we worked together. We had been working

there together for over a year. Me and Mutt took him in the house after he was shot."

The testimony is meager, and without the verdict of the jury that knew the parties and saw them testify, and the ruling of the court refusing to grant a new trial on the ground of the insufficiency of the testimony, barely supports the verdict. There was, however, evidence which if the jury believed would sustain the verdict, and as the trial judge refused to set it aside, we will not disturb it.

There was no error in the court refusing to give special charge number one, as requested by the defendants, as its substance was covered in the general charge. It has been repeatedly held by this court that where a requested instruction is substantially given in the general charge, no error can be predicated upon the refusal.

The ninth ground of the motion for a new trial relates to this instruction given by the court:

"Homicide is excusable when caused by the discharge of a gun which the slayer did not point at the deceased while he was not engaged in an unlawful act, and which is discharged without any carelessness or negligence on his part, and a homicide which is the result of any such carelessness or negligence on the part of the slayer is not more than manslaughter."

This charge is not very clear, and without careful analysis, seems to be contradictory, but we cannot say its lack of clearness harmed the defendant, as the court instructed the jury clearly in his general charge upon the same points covered in the one complained of.

Even if the charge objected to in the seventh ground for a new trial is not as full as it might have been, "The

rule in force in this State is that it is the duty of the trial court to instruct the jury on the law applicable to the facts proven, and a refusal to do so when asked will be error; but if a party wishes to avail himself of the omission of the court to charge the jury on any point in the case, he must ask the court to give the instruction desired; otherwise, he will not be permitted to assign the omission as error." Rawlins v. State, 40 Fla. 155, 24 South. Rep. 65; Blount v. State, 30 Fla. 287, 11 South. Rep. 547.

Finding no error, the judgment is affirmed.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.